## KELLY *against* DUNLAP.

In order to the admission of a deed of conveyance in evidence, it is not material whether the acknowledgment thereof was made before or after suit brought. The acknowledgment makes the original deed, as well as the record thereof, admissable evidence.

Where there are two subscribing witnesses to a deed, proof that one of them has removed out of the state, and of the hand-writing of the other, is sufficient to admit the deed in evidence.

The acknowledgment of a deed of conveyance makes the receipt for the purchase-money annexed to it competent evidence.

ERROR to the Common Pleas of *Indiana* county.

This case, wherein *Robert A. Dunlap* was plaintiff, and *Robert Kelly* defendant below, was submitted by *J. B. Alexander* for plaintiff, and *White* for defendant in error, without argument. The facts are sufficiently stated in the opinion of the court, which was delivered by

HUSTON, J.—This was an action of trespass for cutting timber; the pleas were, not guilty; that the place where, was the freehold of the defendant, and issues.

As it frequently happens, the facts material to decide the cause, would seem not to have been as fully before the court below as could have been wished; and we are pretty sure that we have not every thing which appeared there. Frequently matters are stated by one party or the other, and being admitted by the opponent, they become the ground of the decision of the court and jury, which, nevertheless, do not appear on the record as sent to us. For example, in this case, *Samuel Kelly*, the elder, by what is called an article of agreement, dated the 19th of April, 1806, but which is in fact a formal deed with covenant for further assurance, and a clause of warranty against himself, and all claiming under him, sells the land in question to the plaintiff. There is a special receipt for one hundred and fifty-five dollars of the purchase-money, and an agreement to pay for any overplus, if on measuring, any is found to exist, at the rate of five and an half dollars per acre. The land sold is specifically described as part of a large tract. This article or deed was never recorded.

On the 10th of April, 1818, the same *S. Kelly*, the elder, sells the whole tract to *S. Kelly*, the younger, by deed, which was recorded the 28th of April, 1818. And yet the title to the whole appears to have been made to *S. Kelly*, the elder, after the date of both these deeds, viz. the 13th of April, 1818 His title then acquired, will, to be sure, enure to his alienees. Probably it was well understood below, that he was the owner at the date of both deeds, and that the deed from *James Kelly*, the person in whose name the warrant had been taken out, was a mere formal transfer of legal title.

(Kelly *v.* Dunlap.)

On the 24th of September, 1822, *Samuel Kelly*, the younger, by articles, agreed to sell all that part of the tract of two hundred and thirty-two and one-half acres, except the part claimed by the plaintiff, (about twenty acres,) to *R. Kelly*, the defendant. These articles were recorded on the 24th of September, 1824.

On the 25th of September, 1827, *Samuel Kelly*, the elder, by deed, reciting that of the 19th of April, 1806, makes a further deed to *R. A. Dunlap*, the plaintiff, in no respect more formal than the first. This was recorded on the 26th of December, 1827.

On the 1st of April, 1828, *S. Kelly*, the younger, conveyed the part in dispute, and which was excluded from his first sale, to *D. Kelly*, the defendant.

On the 30th of September, 1830, (a few weeks before the trial; and after the cause was at issue,) *Samuel Kelly*, the elder, acknowledged the instrument, dated the 19th of April, 1806, before a justice of the peace, and when it was offered in evidence, it was objected to, because acknowledged after this suit was pending; the court admitted it to be read, and exception was taken.

The witnesses to the deed were *R. S. & J. M.*, and the same persons were witnesses to the receipt. That receipt, besides the acknowledgment of payment of one hundred and fifty-five dollars, contained an agreement to pay any more which might be due on measuring the land; and a stipulation that *Kelly* was to pay the price of patenting: it was signed by both *S. Kelly* and *R. A. Dunlap*. The defendant proved that *R. S.*, one of the witnesses, had removed out of this state, and that *J. M.*, the other witness, was dead; and then proved the hand-writing of *J. M.* The admission of this in evidence was also objected to, but admitted, and exception taken. There was no error in admitting either of the papers.

Our acts of assembly for recording deeds, prescribe the mode in which a deed shall be acknowledged or proved, in order that it may be legally recorded: if not so acknowledged or proved, the recording is of no effect: if duly acknowledged or proved, and recorded, "the copy, certified under the seal of the proper office, which the recorder is required to affix thereto, shall be received in all courts where produced, and are hereby declared and enacted to be as good evidence, and as valid and effectual in law, as the original deeds themselves," &c. A deed, being generally necessary to show title to land, passes with it, and may be required, when the grantor and witnesses are dead: it is generally necessary to exhibit it in all suits respecting that land; and these suits may be with different people, and in different courts: it was wise, then, to provide a mode by which the deed could be authenticated, so as that it could be read *in all suits, in all courts, against all people.* Our act of assembly has done so, and as the act makes no difference whether the deed has been acknowledged or proved before or after a particular

(Kelly *v.* Dunlap.)

suit was instituted, so the courts have made none: it is to be "*allowed and read in all courts where produced.*" If we were to require notice to the adverse party where a suit is pending, we might go on and require a new acknowledgment, and notice in every suit which should hereafter be pending, and thus render the provisions of the law in this respect useless or deceptive.

But another point is made: a *nisi prius* decision, by an eminent judge, in another country, has said, that though an act of parliament has authorized a paper to be recorded, and made a copy of the record evidence; yet that does not make the original evidence. It is no doubt pleasant to discover what escaped all who went before us, and also to be early acquainted with the discoveries of others. Every discovery, however, of what was obvious, and yet not seen by any person, is suspicious: it may be a mistake, and not a discovery; or if a discovery, may be useless or pernicious. The one in question, (and in discussing it I confine myself to our own acts on this subject,) would destroy at one blow all our recording acts. The "copy of the record under seal," is declared and enacted to be as good evidence, and as "valid and effectual in law, as the original deeds themselves." This must mean as the original, acknowledged or proved in such manner as that it could be legally recorded; but if the original deed, so acknowledged or proved, could not be allowed to be read, and was not valid and effectual, the copy could not be; and all our laws, and all our records of deeds are rendered useless. Hitherto the deed duly acknowledged or proved, or the copy of such deed when recorded, has always been received in all our courts: we have had this point in two cases at this term, and they are the two first in *Pennsylvania.* I apply to them what the Supreme Court of the United States have said, when speaking of the *Statute of Elizabeth,* respecting fraudulent conveyances. The modern decisions go beyond the construction which prevailed at the American revolution, *and ought not to be followed.* 5 *Peters,* 280.

The acknowledgment of the deed made the receipt at the foot of it evidence; such has been the uniform understanding—I don't say decision—for until now I do not know that it was disputed—that it is disputable is another discovery. But in this case the receipt is not in the usual form, and may be called in some respects an additional agreement. It was, however, proved in court in the way known to our law and practice. This exception was not pressed.

The remaining exception is to the charge of the court, "in directing the jury, that the plaintiff might maintain his suit, without proof of notice of the articles of the 19th of April, 1806, between *Samuel Kelly,* the elder, and *R. A. Dunlap.*"

The exception is stronger than the charge will justify. The judge said: "There is no *express proof* of notice to the defendant,

(Kelly *v.* Dunlap.)

the brother-in-law, of the previous contract between his father and the plaintiff; but under all the circumstances of this case, no such proof is necessary;" and then refers the jury to the whole testimony.   It was rightly left to the jury.   The facts that the father embraced in his deed to *S. Kelly, Jr.* what he had before sold to *Dunlap,* and been paid for; that *S. Kelly, Jr.* conveyed the residue of the tract, excepting what had been sold to *Dunlap;* that *Dunlap* then got a second deed from his father-in-law, and put it on record; after which *R. Kelly* got a deed from *S. Kelly, Jr.* for the part conveyed to *Dunlap,* for less than half of what *Dunlap* paid for it twenty-four years ago, made a case in which the judge could not say there was no notice to the defendant of the agreement or deed of 1806, and one which was proper to submit to a jury, and in which it is not strange, they found for the plaintiff.

Judgment affirmed.